IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBY RAY SHAMBURGER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-739-MHT-CSC |
| | ) | (WO) |
| | ) | |
| WARDEN MYERS, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on,
August 17, 2018, by Bobby Ray Shamburger, a convicted felon housed in Bullock
Correctional Facility.  (Doc. 1 at p. 2).  The Plaintiff alleges that on September 2, 2017,
due to a lack of security, he was injured in a fight with another inmate, after which he was
subjected to excessive force by Sgt. Jetton when he called her a "Bitch" and she fired
pepper spray in his eyes.   He also brings a claim for deliberate indifference based on the
lack of proper medical care.  (Doc. 1 at pp. 2-3).  The named Defendants are Warden Walter
Myers, Captain Nathaniel Lawson, Lieutenant Jon Edwards and Sergeant Stephanie Jetton.
(Doc. 1 at p. 1).  The Plaintiff does not say whether he sues these Defendants in their official

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the
docketing process.

or individual capacities.  He seeks declaratory relief.  (Doc. 1 at p. 4).  He also seeks money damages.  (Doc. 12 at p. 1).

The Defendants filed an answer and special report (Doc. 16, Ex. 1-7), which included relevant evidentiary materials in support of this report, specifically affidavits, prison documents addressing the claims presented by Shamburger.  In these documents, the Defendants deny that they failed to protect him, failed to provide constitutionally adequate medical treatment and deny that they used excessive force against him.

After reviewing the special reports and exhibits, the court issued an order on November 29, 2018, requiring Shamburger to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 17).  This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 17 at p. 2). Shamburger filed responses to this order.  (Docs. 25 and 30).  Pursuant to the directives of the order entered on November 29, 2018, the court now treats the Defendants' special

reports as a motion for summary judgment and concludes that judgment is due to be granted in favor of the Defendants.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir.

3

2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the Defendants meet the evidentiary burden, as they have in this case, the burden shifts to the Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S.

4

521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]"  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment

6

motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990).  In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Shamburger's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and extensive review of all the evidence in this matter and finds that Shamburger has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants on his Eighth Amendment claims for excessive force, failure to protect and failure to provide constitutionally adequate medical treatment.  The court will address each of his claims below.

### III.  STATEMENT OF FACTS

On September 2, 2017, the Plaintiff was stabbed during a fight with another inmate. Specifically, he alleges "he stabbed me and in fighting for my life I stabbed him back.  The whole time for over one hour and some in D-Dorm we fought.  The inmates in dorm broken us up cause it was to much blood, no officers."  (Doc. 1 at p. 3).  Following the fight, he alleges "while being escorted by Sgt. Edwards and Sgt. Juton[2], me and Sgt. Juton have words.  I say I'm hurt, she say come on.  I call her a Bitch.  She pepper spray me in my

---

[2] Defendant Sergeant Stephanie Jetton is incorrectly referred to in the Complaint as Sgt. Juton.

eyes so I take off running to the health care unit to get some help because I can't breathe. Not one time did I pose a threat to her because I was stabbed." *Id.*  Next he alleges, "[o]n the early morning of September 3, 2017 after 12:00 am after being stabbed I was put in a wheel chair and two officers at the prison escorted me to a state issued van and took me to Troy Hospital.  The ambulance after determine I was stabbed in the lungs took me to Montgomery Hospital from Troy." *Id.*

The Use of Force Investigative Report of the September 2, 2017 incident which was completed by Defendant Captain Nathaniel Lawson and detailed facts occurring after the altercation between the Plaintiff and inmate Smith states as follows:

> [A]t approximately 10:35 p.m., inmate Bobby Shamburger B/269837, was ordered by Officer Corey McClendon to turn around so that handcuffs could be applied to his wrist.  Inmate Shamburger became hostile and refused to be handcuffed.  Sgt. Stephanie Jetton ordered inmate Shamburger several times to be handcuffed. Inmate Shamburger refused to comply with the orders.  Inmate Shamburger walked towards Sgt. Jetton with his fists balled up and stated, "You shut the fuck up you stupid bitch."  Sgt. Jetton yelled, "Gas" and sprayed a one second burst of Sabre Red Chemical Agent into inmate Shamburger's facial area.  Inmate Shamburger was restrained and all force ceased.  Inmate Shamburger was escorted to the Health Care Unit for decontamination and a medical assessment."

(Doc. 16-6 at p. 1).  Likewise, Defendant Officer Stephanie Jetton stated that after the fight between inmate Shamburger and inmate Smith, the facts occurred as follows:

> [I]nmate Shamburger and two other inmates had exited Dorm D and were attempting to enter Dorm E.  Inmate Shamburger refused multiple orders to be handcuffed.  Inmate Shamburger became hostile towards Lt. Edwards, Officer Buchanan, and me.  Inmate Shamburger stated that he was not going to the Health Care Unit nor Dorm B, Restrictive Housing Unit, and if we tried he and the other two inmates with inmate Shamburger would fight us.  The two inmates with inmate Shamburger became hostile and walked towards Lt. Edwards, Officer Buchanan,

and me.  I ordered the inmates to stop.  They did not comply.  I gave inmate Shamburger a final order to turn around to be handcuffed.  Inmate Shamburger refused stating "Shut the fuck up you stupid bitch."  I yelled, "Gas!" and sprayed a one second burst of Sabre Red Chemical Spray into inmate Shamburger's facial area.  Inmate Shamburger attempted to run towards the Health Care Unit.  Officer Buchanan stopped inmate Shamburger and escorted him to the Health Care Unit.

(Doc. 16-4 at pp. 1-2).

## IV.  DISCUSSION

## A. ABSOLUTE IMMUNITY

To the extent Shamburger requests monetary damages from the Defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the court will now address the Plaintiff's claims brought against the Defendants in their individual capacities.

## B.  RESPONDEAT SUPERIOR

The Plaintiff alleges that the injuries he received in a fight with another inmate on September 2, 2017 occurred "under Warden Myer's leadership over the prison, and Captain Lawson over security duty that night, Sgt. Juton and Sgt. Edwards were left to supervise the prison on night shift."  (Doc. 1-1 at p. 1).  The Plaintiff makes no allegations that the

11

Defendants, other than Defendant Sergeant Jetton, used excessive force against him, and he does not allege that any Defendant took actions which were deliberately indifferent to his medical needs. Rather, he claims that Defendant Sergeant Jetton used excessive force against him by spraying him with pepper spray after she interceded in his altercation with another inmate and he called her a "Bitch". (Doc. 1 at p. 3). However, he does not allege that the other Defendants participated in the conduct which supports his excessive force claim. Rather, he alleges that all the Defendants are liable to him because they failed to protect him from the altercation with another inmate. (Doc. 1 at p. 3).

To the extent the Plaintiff alleges that Defendants Warden Myers and Captain Lawson are liable to him in their supervisory positions based on a theory of respondeat superior, those claims must fail. The law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994). Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a

section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for the alleged excessive force and unconstitutional conditions could attach to Defendants only if they either "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Indeed, a causal connection maybe established either when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when (2) "a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights" or when (3) "facts support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (Citations omitted). The Plaintiff has alleged no such facts. (Doc. 1 at pp. 5-9). Thus, the court concludes that the Plaintiff's claims against the named supervisory Defendants Warden

Myers and Captain Lawson fail because the Plaintiff has not alleged their personal involvement in the actions against him, nor has he alleged any facts demonstrating the necessary causal connection between them and their subordinates.    Although the court could dismiss Defendants Warden Myers and Captain Lawson on this basis alone, as an alternative basis of dismissal, the court will now address the merits of the Plaintiff's claims against all the Defendants.

## C.  DELIBERATE INDIFFERENCE

### 1.  <u>Standard of Review</u>.

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison

officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a

serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment"). In determining whether a delay in medical treatment constituted deliberate indifference, the court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee County, Fla.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the detrimental effect caused by the delay to succeed on his claim. *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].

Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific

> facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

2. **Failure to Protect**.

To survive the properly supported motion for summary judgment filed by the Defendants, Shamburger must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Shamburger must then satisfy the subjective component. This requires Shamburger to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original). Indeed, the law is clear; a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, to succeed on a deliberate indifference claim based upon a failure to protect, the plaintiff must

demonstrate the defendants' "deliberate indifference to a known, substantial risk of serious harm" to him. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

In this action, the Plaintiff fails to allege facts from which the Defendants could have understood that a serious risk of harm existed to the Plaintiff. The Plaintiff alleges that he and another inmate fought in D-Dorm on September 2, 2017, and knives were used during this hour plus altercation which was broken up by other inmates. (Doc. 1 at p. 3). Specifically, he states that

"[d]uring half time game of Ala. vs. Fl. St. they call pill call for D-Dorm. As I am leaving to go to pill call I was approached by a white inmate who owe me $500.00. As we were having a casual conversation about my money his man step up attempting to get in our affair about my bussiness {sic}, so I politely say this don't have anything to do with you. . . . so when I turn to leave I feel something hit me in the back before I realize what's going on. I feel another hit when I turn around the black inmate got some kind of prison made knife so he tried to hit me again . . . somehow I manage to get his weapon and I started stabbing him back. That's when I black out when I come to he is on top of me and we are fighting hard. I'm losing blood and he is also losing a lot of blood. We have been fighting for a while now because I remember the game came back on. So after a lot of inmates seen we were bleeding bad they put themself's {sic} in harms way and split us up from each other. When help does arrive, Sgt. Juton and Sgt Edwards are taking me to the health care unit and on the way me and Sgt. Juton have a few words."

(Doc. 1-1 at pp. 1-2; see also, Doc. 25 at p. 4). Nowhere does the Plaintiff allege that he knew he was at a risk of harm from the black inmate with whom he fought. Nor does he allege facts from which this court could infer that Defendants were aware that he felt threatened in anyway by the black inmate prior to the September 2, 2017 altercation. Thus, the court concludes that the Plaintiff has failed to allege facts necessary to demonstrate the objective and subjective requirements of an Eighth Amendment claim. Accordingly, court

concludes that summary judgment is due to be granted in favor of the Defendants on the claim alleging they acted with deliberate indifference to Shamburger's safety.

3. **Deficient Medical Treatment**.

Shamburger also alleges the Defendants acted with deliberate indifference to his medical needs because of "improper medical practice." (Doc. 1 at p. 2). However, the Plaintiff admits following the September 2nd altercation that he "was put in a wheel chair and two officers at the prison escorted me to a state issued van and took me to Troy Hospital.  The ambulance after determine {sic} I was stabbed in the lungs took me to Montgomery Hospital from Troy." (Doc. 1 at p. 3). The Plaintiff does not allege that medical treatment was denied.  Indeed, the prison records show that after Cubical Officer Passion Foster observed the Plaintiff bleeding and called for assistance, he was evaluated in the health care unit within one hour by Nurse Rae King and "wounds cleansed and dressed. No distress noted" and he received a tetanus shot.  Thereafter, he was transported to a free world hospital for further treatment. (Doc. 16-5 at p. 1; 16-7 at p. 2; 28-1 at p. 1). The Plaintiff complains, however, that he had to "wait another 1 hour and 24 minutes to get help" before he was transported to an outside hospital for further care. (Doc. 25 at pp. 1 and 4).  In light of the undisputed medical evidence, the court concludes that this allegation of delay wholly fails to establish a claim for deliberate indifference.  For the foregoing reasons, summary judgment is due to be granted in favor of the Defendants on the Plaintiff's claim of deliberate indifference due to ineffective medical treatment.

## C.  EXCESSIVE FORCE

The Plaintiff claims that Defendant Sergeant Jetton used excessive force against him by spraying him with pepper spray when he called her a "Bitch" as she was escorting him to the healthcare unit after his altercation with another inmate in which he had been stabbed. (Doc. 1 at p. 3).  He further claims that after she sprayed him "in the eyes so now I can't see or breath {sic} so I take off running towards the health care unit."  (Doc. 1-1 at p. 2). Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id*. (internal quotations omitted).  To establish the subjective element, a plaintiff must

demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21.  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4.  "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, "inferences may be drawn as to whether the

> use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation

omitted).  "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding."  *Bennett*, 898 F.2d at 1533.  Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order.  Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force."  *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that the Plaintiff alleges "[n]ot one time did I pose a threat to her [Sgt. Jetton] because I was stabbed."  (Doc. 1 at p. 3).  However, the Plaintiff admits that following the altercation with another inmate in which he was injured, he called Defendant Sgt. Jetton "Bitch".  *Id.*  Furthermore, Sgt Jetton testified by affidavit that before she "sprayed a one second burst of Sabre Red Chemical Spray into inmate Shamburger's facial area" the Plaintiff had refused multiple orders to be cuffed so that he could be taken to the health care unit.  (Doc. 16-4 at p. 1).   Indeed, the Plaintiff does not dispute the findings of the investigating officer and Sgt. Jetton's testimony that he refused multiple orders to be handcuffed. (Doc. 16-6 at p. 1; Doc. 16-4 at p. 1).   Rather, he states that "when Defendants Sgt. Edwards and Sgt. Jetton came and got me they let me walk to the HCU.  As we walking out of D-Dorm going down the side walk I'm talking through E-Dorm window we have words she just start spraying me knowing I'm already stabbed."  (Doc. 25 at pp. 1 and 4).  Thus, it is undisputed that the Plaintiff refused handcuffing.  The Plaintiff's focus on

25

Jetton's knowledge that he was wounded is immaterial in this context.  The evidence does not establish that the Plaintiff was incapacitated by his wounds.  He admits he was running towards the health care unit.  His refusal to be restrained demonstrates that the brief use of pepper spray to restore order arose from the Plaintiff's failure to obey multiple orders from Defendant Sgt. Jetton. *Pearson*, 665 F. App'x at 864.

With regard as to whether the Plaintiff posed a threat and as to the reasonableness of the force used, it is undisputed that the Plaintiff refused orders to be handcuffed. (Doc. 16-6 at p. 1; Doc. 16-4 at p. 1). The Plaintiff claims, however, that he was stabbed and therefore posed no threat. (Doc. 1 at p. 3).  Defendant Jetton testified that prior to discharging the pepper spray against the Plaintiff, he "became hostile towards Lt. Edwards, Officer Buchanan, and me.  Inmate Shamburger stated that he was not going to the Health Care Unit nor Dorm B, Restrictive Housing Unit, and if we tried he and the other two inmates with inmate Shamburger would fight us.   The two inmates with inmate Shamburger became hostile and walked towards Lt. Edwards, Officer Buchanan, and me. I ordered the inmates to stop.  They did not comply.  I gave inmate Shamburger a final order to turn around to be handcuffed.  Inmate Shamburger refused stating "Shut the fuck up you stupid bitch." (Doc. 16-4 at p. 1).  Indeed, the Plaintiff does not dispute these facts. Thus, the court concludes that the amount of force used by Defendant Jetton was justified by the Plaintiff's repeated non-compliance with orders to be handcuffed, the need to restore order following an altercation between inmates in which the Plaintiff was involved, and

the presence of other inmates who were likewise failing to follow her orders.  Accordingly, the court concludes that the first four *Whitley* factors weigh against the Plaintiff's claim of excessive force.

With respect to the fifth *Whitley* factor concerning the lack of serious injury, the court notes the Plaintiff claims that following the shot of pepper spray to his eyes "I take off running to the health care unit to get some help because I can't breathe." (Doc. 1 at p. 3).  The Plaintiff does not allege that he suffered any additional injury from the pepper spray.  Rather, it is undisputed that the Plaintiff received medical attention for his stab wounds following the shot of pepper spray to his face and that the Plaintiff was in "no distress" when examined.  (Doc. 16-5 at p. 1; 16-7 at p. 2; 28-1 at p. 1).  Thus, the Plaintiff fails to allege facts from which this court could conclude that the alleged injuries and the pain resulting from the pepper spray were serious.  Accordingly, the court concludes that summary judgment is due to be granted on the Plaintiff's excessive force claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motion for summary judgment (Doc. 16) be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. No costs be taxed.

On or before **May 6, 2021**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of April, 2021.


    /s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE